Fuqua and Hartman v. Dinwiddie.

6L 645
9L 19
10L 115
1pi 214
1pi 561
2pi 355
3pi 13

FUQUA AND HARTMAN, Ex'rs, v. THOS. H. DINWIDDIE.

1. WITNESS. *Competency. Evidence.* In an action against an executor, it is only *parties* who are excluded from testifying as to transactions with or statements by the testator; persons *not parties* may thus testify although interested in the result.

2. SAME. *Same. Parties. Who are.* Where the suit is against one maker and the executor of a deceased maker of a note before a justice, and the former submits to the judgment of the justice and the latter appeals, the former is not a party to the cause in the circuit court so as to exclude him as a witness under the above rule.

3. SAME. *Question reserved.* Whether the plaintiff may call one defendant to testify against a co-defendant, who is an executor, under this statute.

4. CODE CONSTRUED. Section 3813 a–c, T. & S.

5. LIMITATION. *New promise.* A new promise made by one co-joint debtor to the other, is not sufficient of itself, but will be if the promise was intended to be, and was, in fact, communicated to the creditor and acted upon by him.

FROM CARROLL.

Appeal in error from the Circuit Court of Carroll county. JO. R. HAWKINS, J.

A. & A. HAWKINS for Fuqua and Hartman.

B. G. EZELL for DINWIDDIE.

MCFARLAND, J., delivered the opinion of the court.

Dinwiddie sued D. Bell and the plaintiffs in error as executors of John Norman, deceased, upon a note executed jointly by Bell and Norman. The suit was commenced before a justice of the peace, who rendered judgment against the defendants for the balance due upon the note. Bell submitted to the judgment, but the executors of Norman appealed to the circuit court, where again the result was against them, and they have appealed in error to this court.

The first error assigned is the admission of Bell as a witness for the plaintiff, to prove a new promise made by Norman in his lifetime, in order to take the case out of the statute of limitations of six years.

By secs. 3313 a–c, T. & S.'s Code, no person shall be incompetent to testify because he or she is a party to or interested in the issue to be tried. The next section contains an exception, to-wit: "In actions or proceedings by or against executors, administrators or guardians, in which judgment may be rendered for or against them, *neither party* shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party or required to testify thereto by the court."

It will be observed that this exception does not exclude, in the given cases, witnesses *merely because of*

*their interest.* The exclusion goes only to *the parties.* *"Neither party* shall be allowed to testify against the other," etc. So that if the witness be not a party, he is competent for all purposes under the general provisions of the preceding section, notwithstanding he may be interested in the result. Such is the letter of the statute, and so we have construed it.

Bell was not a party to the cause in the circuit court. He did not appeal from the justice's judgment, and hence, in the circuit court, the parties to the cause were Dinwiddie on the one side, and the executors of Norman on the other; and Bell, although indirectly interested in the result, was not incompetent by the terms of the statute. In all cases the statute allows either party to testify when called by the other party. Whether the plaintiff may call one defendant as a witness against the other, who is an executor or administrator, to prove conversations or statements of his intestate or testator, we need not decide.

The next objection is, that the proof does not show that the defendants were executors of John Norman, deceased.

If this be not matter in abatement rather than in bar, still it appears that the defendants in their appeal bond from the justice, as well as in their appeal bond to this court, describe themselves as executors of John Norman, deceased, and a copy of their bond as executors is in the record, although not part of the bill of exceptions. It was probably, however, matter in abatement.

Perhaps the most serious question in the case is,

whether the proof was *sufficient* to meet the defense of the statute of limitations. The testimony of Bell shows very clearly distinct acknowledgments of the debt, and a willingness, and indeed an anxiety to pay it, within the period of limitation. But these conversations were between Norman and Bell, *the two debtors*, in the absence of Dinwiddie, the creditor.

To take the case out of the statute, the proof must make out a *new contract*, either by an express promise, or an acknowledgment of the justice of the debt and willingness to pay it, in such manner that the law will imply a promise: 7 Yer., 534; 10 Yer., 452; *Broddie* v. *Johnson*, 1 Sneed, 464; 5 Sneed, 159. The creditor must be in some way a party to the new contract. Mere agreements and conversations between the debtors, not communicated to the creditor, would probably not be sufficient. So we held in the case of *Bachman* v. *Roller*, September term, 1877, at Knoxville, that admissions or promises made to a stranger were not admissible unless intended to be communicated to the creditor.

There is no exception to the charge in the present case, and no request for further instructions, and while the charge is not accurate, the inaccuracy did not effect the vital question in the case.

While, as we have said, the greater part of Bell's testimony goes only to conversations between himself and Norman, yet the following part of his testimony, we think, may be held sufficient to sustain the verdict. After detailing the conversation between himself and Norman, in which the latter expressed great anx-

iety to pay the debt and regrets that it had not been paid, he says: "He (meaning Norman) wanted witness to, get up the note and let him (Norman) and witness renew it. Witness made arrangements with Dinwiddie to renew the note, and went to see Norman, but found him too sick to talk on business, and he soon thereafter died."

This, we think, justified the jury in finding that Bell for himself, and also by the express direction of Norman, agreed with Dinwiddie to renew the note, and the renewal was prevented by the death of Norman. The promises made by Norman were communicated by Bell to Dinwiddie, and accepted by him.

The judgment will be affirmed.